**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THOMAS ABBOTT, LARRY ORMSBY,
ANTONIO MENDOZA,
and EDSOL J. STANLEY,

              Plaintiffs,

                                      CIVIL CASE NO. 05-72793
v.                                    HON. MARIANNE O. BATTANI

STATE OF MICHIGAN,
JENNIFER GRANHOLM, GOVERNOR;
MICHIGAN DEPARTMENT OF
TREASURY, JAY B. RISING, TREASURER; and
MICHIGAN DEPARTMENT OF
CORRECTIONS,
PATRICIA L. CARUSO, DIRECTOR.

              Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Before the Court is Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Doc. #12). Plaintiffs filed a putative class action in a Four Count Complaint. Plaintiffs' complaint alleges that Defendants have unlawfully converted their federally protected pension benefits in contravention of their Due Process rights, ERISA, and state law. Defendants seek dismissal or, in the alternative, summary judgment, raising a number of deficiencies in Plaintiffs' claims regarding procedural bars and governmental immunity.

Plaintiffs are prisoners who were or are serving sentences in various State of Michigan

correctional facilities. During their period of incarceration, the State expends monies for the cost of their incarceration. Pursuant to the State Correctional Facility Reimbursement Act (SCFRA), MICH. COMP. LAWS ANN. § 800.401 *et seq*., a prisoner is required to reimburse the State of Michigan for the costs of incarceration from the prisoner's own assets, which is defined to include pension benefits.[1]

To secure reimbursement, the State Treasurer files an action in state circuit court and obtains an Order to Show Cause why the relief of the complaint should not be granted under MICH. COMP. LAWS ANN. § 800.404(1)(2). SCFRA requires that:

> [t]he complaint and order shall be served upon the prisoner personally or, if the prisoner is confined in a state correctional facility, by registered mail addressed to the prisoner in care of the chief administrator of the state correctional facility where the prisoner is housed, at least 30 days before the date of hearing on the complaint and order.

Id., § 800.404(2).

At the Show Cause hearing, and before entering any order, SCFRA requires the court to consider 1) whether the prisoner has any assets which ought to be subjected to the claim of the State, and 2) any legal and moral obligations of the prisoner to support dependents. Each Plaintiff in this case was a defendant in separate SCFRA actions. Abbott, Mendoza, and Stanley each had a SCFRA Order entered against them that awarded the State a percentage of their monthly pension payment. When the SCFRA asset is a monthly pension payment, the final order awards a percentage of the payment as reimbursement, and requires the prisoner to

---

[1] "'Assets' means property, tangible or intangible, real or personal, belonging to or due a prisoner or former prisoner including income or payments to such prisoner from social security, worker's compensation, veteran's compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever . . . ." MICH. COMP. LAWS ANN. § 800.401a(a).

2

immediately direct his pension plan provider to send the pension payments to his prison address for deposit into his prison account.  If the prisoner fails or refuses to follow the order, the order requires the warden at such facility to serve a copy of the order on the pension plan provider, along with a certification of the prisoner's address.  After the benefits are delivered to the prisoner and deposited in the prison account, they become an asset subject to appropriation under SCFRA.  The order authorizes the warden, as receiver of the inmate's prison account, to distribute the funds pursuant to the circuit court order.

In contrast, Ormsby received a lump sum pension payment at the prison for deposit into his prisoner account.  While the funds were in the prisoner account a SCFRA action was filed resulting in a final order directing the warden to disburse a percentage of the account balance to the State.

Specifically, the facts of each proposed class representative's SCFRA action are as follows:

Thomas Abbott: On March 10, 1997, the Clinton County Circuit Court entered an order directing 33% of Abbott's monthly pension payments to the State of Michigan to partially reimburse the State for the costs of his incarceration.  Abbott appealed the SCFRA order asserting that the order was an assignment of his pension payments and in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Although, the appellate court reversed the circuit court, the Michigan Supreme Court held that there was no assignment or alienation of the prisoner's pension payments when the warden disbursed funds already paid into an inmate's account because ERISA does not protect pension payments after they have been paid to the beneficiary.  Abbott then petitioned the United States Supreme Court

for *certiorari*, which was denied on January 12, 2004.  State Treasurer v. Thomas Abbott et al., 468 Mich. 143, 660 N.W.2d 714 (2003), cert. denied 540 U.S. 1112 (2004).

Antonio Mendoza: On December 17, 1997, the Oakland County Circuit Court entered an order directing 60% of Mendoza's monthly pension payments to the State of Michigan to partially reimburse the State for the costs of his incarceration.  On February 10, 1998, Mendoza sent a letter of inquiry to the Attorney General's office questioning the seizure of his pension payments.  In response, Mendoza was informed that he needed to raise the issue in court.  Mendoza did not appeal the circuit court order.

Edsol Stanley: On June 30, 2004, the Oakland County Circuit Court entered an order directing 90% of Stanley's monthly pension payments to the State of Michigan to partially reimburse the State for the costs of his incarceration.  On August 3, 2004, attorney Timothy Barkovic sent a letter to the Attorney General's office on behalf of Stanley requesting a stipulation to set aside the default, and if not, a motion addressing the issue would be filed.  Plaintiff Stanley never filed a motion or appealed the June 30, 2004, circuit court order.

Larry Ormsby: On August 13, 2002, after considering Ormsby's motion for summary disposition based on an ERISA defense, the Ogemaw County Circuit Court entered an order directing 90% of Ormsby's prison account, including a one-time lump-sum pension payment, to the State of Michigan to partially reimburse the State for the costs of his incarceration.

Proposed class representatives Abbott, Mendoza, Stanley, and Ormsby filed a putative class action complaint on behalf of themselves and other prisoners who have had a portion of their private pension taken pursuant to state court SCFRA orders.  The complaint names the State of Michigan, the Department of Treasury and Corrections, and state officials Jennifer

Granholm, Governor of the State of Michigan, Jay Rising, State Treasurer, and Patricia Caruso, Director of the Department of Corrections as defendants. The individual defendants are named only in their official capacity. Defendants now seek dismissal, or in the alternative summary judgment, contending: the Rooker-Feldman doctrine prohibits district court review of a state court order for alleged Constitutional and federal law errors; the doctrine of *res judicata* operates to bar Plaintiffs from relitigating claims that were previously decided by a state court of competent jurisdiction; the Eleventh Amendment bars federal jurisdiction; the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims; Defendants are entitled to qualified immunity; and, Plaintiffs have failed to state a claim upon which relief can be granted because Defendants' conduct does not violate ERISA, and is not an unconstitutional taking in violation of the Fourteenth Amendment.

## II.     STANDARD OF REVIEW

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Ky., 381 F.3d 511, 516 (6th Cir. 2004). A district court has no subject matter jurisdiction over a claim if that claim is barred by the Rooker-Feldman doctrine, *res judicata*, or by the Eleventh Amendment. Id.

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief may be granted." "This rule allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every allegation in

5

the complaint is true.  Under this standard, a complaint should be dismissed only where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir.1993)." Tidik v. Ritsema, 938 F.Supp. 416, 421 (E.D. Mich. 1996).  When faced with a FED. R. CIV. P. 12(b)(6) motion to dismiss, a district court,

> . . . must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990).  A complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir.1990) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).  A judge may not grant a FED. R. CIV. P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. Id.  While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988).  "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Id. (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir.1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (quoting In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir.1981)).

In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

7

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence itself need not be the sort admissible at trial. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252.

### III.  ANALYSIS

"[T]he threshold question in every federal case," is whether the court has the power to entertain the suit. Warth v. Seldin, 422 U.S. 490, 498 (1975). The Rooker-Feldman doctrine divests all federal district courts of subject matter jurisdiction to review state court judgments. See generally Rooker v. Fid. Trust Co., 263 U.S. 413, (1923); Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Peterson Novelties, Inc. v. City of Berkley, 305 F.3d 386, 390 (6th Cir. 2002). The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the United States Supreme Court is the exclusive federal court with jurisdiction to review state court decisions. Accordingly, the doctrine prevents district courts from entertaining challenges to state

court decisions, "even if those challenges allege that the state court's action was unconstitutional." Feldman, 460 U.S. at 486.

The Rooker-Feldman doctrine promotes firmly-held notions of federalism and comity by preserving the integrity "of the state court decision-making process" and "the repose of state court judgments." Adkins v. Underwood, 520 F.2d 890, 892-93 (7th Cir. 1975). Our federalist system of government relies on the capacity of both state and federal courts to protect the constitutional rights of litigants. Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286 (1970) (finding that our dual system of government "could not function if state and federal courts were free to fight each other for control of a particular case"). Allowing federal district courts to review Michigan decisions could have the deleterious effect of "displac[ing] almost the whole of state litigation into the federal courts by making the final judgment in the state court the cause of action that kicks off a suit to undo that judgment in federal court." Lynk v. Laporte Super. Ct. No. 2, 789 F.2d 554, 563 (7th Cir. 1986).

Consistent with these federalism and comity concerns, the Rooker-Feldman doctrine raises a jurisdictional bar that prevents federal district courts from second-guessing state court decisions. Texaco, Inc. v. Pennzoil Co., 784 F.2d 1133, 1142 (2d Cir. 1986), rev'd on other grounds, 481 U.S. 1 (1987). The doctrine prohibits federal courts from engaging in appellate review of not only state court judgments, but also of any claim "inextricably intertwined" therewith. Peterson Novelties, 305 F.3d at 390. "In practice this means that when granting relief on the federal claim would imply the state-court judgment on the other issues was incorrect, federal courts do not have jurisdiction." Pieper v. Am. Arbitration Ass'n, 336 F.3d 458, 460 (6th Cir. 2003) (citation omitted). As the Supreme Court has recently ruled, the

9

doctrine bars those cases "brought by state-court losers complaining of injuries caused by state-court judgments . . . inviting district court review and rejection of those judgments." Exxon Mobil Corp., v. Saudi Basic Industries, Inc., 125 S.Ct. 1517, 1521-22 (2005).

The Rooker-Feldman doctrine prohibits both direct attacks on the substance of the state court decision, and a challenge to the procedures used by the state court in arriving at its decision. Anderson v. Charter Township of Ypsilanti, 266 F.3d 487, 493 (6th Cir. 2001). "Therefore, in order to determine whether the Rooker-Feldman doctrine is properly applicable to this case, we must look to what the state court decided." Peterson Novelties, 305 F.3d at 390. The state circuit court orders direct Plaintiffs to reimburse the state for the cost of confinement, and direct various percentages of their assets be paid to the state. The orders also require Plaintiffs' pension benefit providers to mail the benefit checks to a prison address so that the checks can be deposited, and thus garnished, by prison officials. Plaintiffs' complaint alleges that Defendants have unlawfully converted their federally protected pension benefits in contravention of their Due Process rights, ERISA, and state law.

The United States Supreme Court has held that the involuntary transfer of ERISA benefits is prohibited under the anti-alienation clause, 29 U.S.C. § 1056(d). Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 376 (1990). In Guidry, the Court refused to craft a restitution exception to ERISA. Once pension benefits are deposited into a personal account, ERISA no longer operates to protect those funds. Roberts v. Baugh, 986 F.Supp. 1074, 1077 (E.D. Mich.)(Zatkoff, J.)(citing Trucking Employees of N. Jersey Welfare Fund, Inc. v. Coville, 16 F.3d 52 (3d Cir. 1994). However, the pension benefit provider does not voluntarily deposit the pension funds into the prisoner's account when it does so by court order.

10

Therefore, a court order forcing the pension benefit provider to deposit funds into a prison account from which Defendants can withdraw monies from, operates as an assignment and violates the anti-alienation clause of ERISA.  Id.

However, in order to grant Plaintiffs the relief that they seek, this Court would have to alter or amend the circuit court orders.  This is impermissible because Plaintiffs are seeking to undo a state court judgment, and the Supreme Court is the only federal court with jurisdiction to review state court judgments.  Although Plaintiffs' substantive argument has merit, the Court lacks jurisdiction to grant them the relief they seek.

Plaintiffs next contend that the nature of the SCFRA proceeding, and their confinement, did not give them a full and fair opportunity to litigate the issue.  However, all that is required is that Plaintiffs had a "reasonable opportunity to raise the federal claim in the state court proceedings."  Blue Cross and Blue Shield of Md., Inc. v. Weiner, 868 F.2d 1550, 1555 (11th Cir. 1989) cert. denied, 493 U.S. 892 (1989).  It is obvious that Plaintiffs had a reasonable opportunity to raise the federal claim as evidenced by Abbott's appeal process.  Abbott appealed the garnishment of his pension benefits up to the Michigan Supreme Court, and the United States Supreme Court ultimately denied *certiorari* to hear an appeal of that decision.  Thus, any claim that the SCFRA proceeding denied them a fair opportunity to litigate the issue is meritless.

There is one exception to the Rooker-Feldman doctrine.  A federal court may exercise jurisdiction "where the plaintiff's claim is merely 'a general challenge to the constitutionality of the state law applied in the state action,' rather than a challenge to the law's application in a particular state case."  Hood v. Keller, 341 F.3d 593, 597 (6th Cir. 2003) (citation omitted).

"However, even where a general constitutional attack is mounted, the state proceeding may foreclose the federal claim under the doctrine of *res judicata*."[2] Howard v. Whitbeck, 382 F.3d 633, 639 (6th Cir. 2004).

*Res judicata* consists of two preclusion concepts: issue preclusion and claim preclusion. Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 77 fn. 1 (1984).

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. See Restatement, supra, § 27. . . . . Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.

Id. As a general rule, the doctrine of *res judicata* "is applicable to a second suit involving the same cause of action as that raised in the first suit, and will bar relitigation of issues which actually were or might have been presented before the court in the first action." Senior Accountants, Analysts, & Appraisers Ass'n v. City of Detroit, 231 N.W.2d 479, 481 (Mich. Ct. App. 1975).

Issue preclusion "precludes the relitigation of an issue in a subsequent cause of action between the same parties or their privies, as long as the earlier proceeding resulted in a valid, final judgment and the same issue was actually litigated and necessarily determined." Id., at 396. For the doctrine of issue preclusion to apply, the following four requirements must be satisfied: "(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment

---

[2] Res judicata is not a limitation on jurisdiction; rather, it is a defense that must be pleaded. See Buckley v. Ill. Judicial Inquiry Bd., 997 F.2d 224 (7th Cir. 1993).

on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." NAACP v. Detroit Police Officers Ass'n, 821 F.2d 328, 330 (6th Cir. 1987).  Issue preclusion "only applies where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally." People v. Gates, 452 N.W.2d 627, 631 (Mich. 1990).

Claim preclusion, on the other hand, has the following four requirements under Michigan law: (1) the prior action must have been decided on the merits; (2) the resultant decree in the prior action must have been a final decision; (3) the issues in the second action must have been either resolved or capable of resolution in the first; and (4) both actions must involve the same parties or their privies. Peterson Novelties, Inc. v. City of Berkley, 305 F.3d 386, 394 (6th Cir. 2002)(citations omitted).  "Michigan law defines claim preclusion broadly to preclude relitigation of all claims actually litigated in a prior action between the same parties and those claims arising out of the same transaction that could have been litigated." Id.

Plaintiffs' claims are barred under Michigan's doctrine of *res judicata*.  First, Plaintiffs' claims are barred under claim preclusion because all four requirements are met: 1) the state SCFRA proceedings were decided on the merits; 2) the resultant SCFRA orders were final decisions; 3) Plaintiffs' ERISA preemption, Due Process, and conversion claims raised in the present action were either resolved or capable of resolution in the state proceedings; and 4) both actions involved the same parties.  Plaintiffs' federal claims arise from the same transaction, facts, and evidence in the state court proceedings, because all are based on the state courts' orders redirecting Plaintiffs' pension benefit checks to their prison addresses. Huggett v. Dep't of Natural Res., 590 N.W.2d 747, 752 (Mich. Ct. App. 1998) ("The test for determining whether

13

two claims are identical for *res judicata* purposes is whether the same facts or evidence are essential to the maintenance of the two claims."). Because the test is whether the claims raised in subsequent litigation *could have been* resolved in the first suit, Plaintiffs' claims are barred. Plaintiffs could have raised both a general challenge to the constitutionality of the state law applied in the state action and their ERISA, Due Process, and conversion claims, during the SCFRA proceedings. Therefore, claim preclusion bars Plaintiffs' federal court claims.

Next, two of the plaintiffs are barred by issue preclusion from raising an ERISA claim. Specifically, plaintiffs Abbott and Ormsby raised, and litigated, ERISA as a defense to the garnishment of their pension benefits. Therefore, the doctrine of issue preclusion bars Abbott and Ormsby from proceeding on their ERISA claims because all four requirements of that doctrine have been met: 1) the precise issue regarding ERISA preemption was raised and actually litigated in the prior state court SCFRA proceedings; 2) determination of ERISA preemption was necessary to the outcome of plaintiffs' challenges to the SCFRA orders; 3) the prior proceedings resulted in final judgments on the merits, and; 4) Abbott and Ormsby had a full and fair opportunity to litigate the issue in the prior proceedings.

Because Plaintiffs claims are precluded by the Rooker-Feldman doctrine and *res judicata*, the remaining grounds for dismissal raised by Defendants will not be addressed.

IV. **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is **GRANTED.  IT IS FURTHER ORDERED** that Plaintiffs' Complaint is **DISMISSED.**


                                    s/Marianne O. Battani
                                    MARIANNE O. BATTANI
                                    UNITED STATES DISTRICT JUDGE


DATED: January 31, 2006


### CERTIFICATE OF SERVICE

Copies of this Order were mailed to Timothy Barkovic and Suann D. Cochran on this date by ordinary mail and/or electronic filing.


                                    s/Bernadette M. Thebolt
                                    DEPUTY CLERK